1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                         **CENTRAL DISTRICT OF CALIFORNIA**

10                              **EASTERN DIVISION**

11

12   MICHELLE HILL,                    )      No.  EDCV 09-769 CW
                                       )
13                   Plaintiff,        )      DECISION AND ORDER
              v.                       )
14                                     )
     MICHAEL J. ASTRUE,                )
15   Commissioner, Social              )
     Security Administration,          )
16                                     )
                     Defendant.        )
17   _____)

18

19        The parties have consented, under 28 U.S.C. § 636(c), to the

20   jurisdiction of the undersigned Magistrate Judge.  Plaintiff seeks

21   review of the Commissioner's denial of disability benefits.  As

22   discussed below, the court finds that the Commissioner's decision

23   should be reversed and this matter remanded for further proceedings.

24                            **I.   BACKGROUND**

25        Plaintiff Michelle Hill was born on April 22, 1971, and was

26   thirty-seven years old at the time of her administrative hearing.

27   [Administrative Record ("AR") 16, 19.]  She has a limited education

28   (tenth grade) and past relevant work experience as a sales attendant

                                      1

1  and retail sales person.  [AR 16, 47, 123.]  Plaintiff alleges

2  disability on the basis of depression, bipolar disorder, anxiety

3  attacks, short-term memory problems, difficulty concentrating,

4  feelings of sadness, inability to drive due to phobias, lack of

5  motivation, and plantar fasciitis. [AR 13.]

6  ## II.   PROCEEDINGS IN THIS COURT

7      Plaintiff's complaint was lodged on April 17, 2009, and filed on

8  April 24, 2009.  On September 29, 2009, Defendant filed an answer and

9  Plaintiff's Administrative Record ("AR").  On November 17, 2009, the

10 parties filed their Joint Stipulation ("JS") identifying matters not

11 in dispute, issues in dispute, the positions of the parties, and the

12 relief sought by each party.  This matter has been taken under

13 submission without oral argument.

14 ## III.   PRIOR ADMINISTRATIVE PROCEEDINGS

15     Plaintiff applied for a period of disability and disability

16 insurance benefits ("DIB") under Title II of the Social Security Act

17 and supplemental security income ("SSI") under Title XVI on December

18 22, 2006, alleging disability since September 27, 2005. [AR 9.]

19 Plaintiff is insured for DIB purposes until September 30, 2010. [Id.]

20 After the applications were denied initially and on reconsideration,

21 Plaintiff requested an administrative hearing, which was held on

22 December 18, 2008, before Administrative Law Judge ("ALJ") David M.

23 Ganly. [AR 19-51.]  Plaintiff appeared without counsel[1], and testimony

24

25      [1]  The ALJ informed Plaintiff that the record indicated that
   written notices had been sent to Plaintiff prior to the hearing
26 advising her of the right to representation. [AR 21.]  The ALJ asked
   Plaintiff whether it was correct to assume that Plaintiff was aware of
27 her right to representation but chose not to retain an attorney, and
   Plaintiff responded yes. [AR 21-22.]  The hearing proceeded. [AR 22-
28 51.]

1    was taken from Plaintiff, medical expert Joseph Malancharuvil and

2    vocational expert Stephen Berry. [AR 19.]   The ALJ denied benefits in

3    a decision issued on January 15, 2009. [AR 9-18.]   When the Appeals

4    Council denied review on March 25, 2009, the ALJ's decision became the

5    Commissioner's final decision. [AR 1-3.]

6                          **IV.   <u>STANDARD OF REVIEW</u>**

7         Under 42 U.S.C. § 405(g), a district court may review the

8    Commissioner's decision to deny benefits.   The Commissioner's (or

9    ALJ's) findings and decision should be upheld if they are free of

10   legal error and supported by substantial evidence.   However, if the

11   court determines that a finding is based on legal error or is not

12   supported by substantial evidence in the record, the court may reject

13   the finding and set aside the decision to deny benefits.   <u>See</u> <u>Aukland</u>

14   <u>v. Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001); <u>Tonapetyan v.</u>

15   <u>Halter</u>, 242 F.3d 1144, 1147 (9th Cir. 2001); <u>Osenbrock v. Apfel</u>, 240

16   F.3d 1157, 1162 (9th Cir.  2001); <u>Tackett v. Apfel</u>, 180 F.3d 1094,

17   1097 (9th Cir. 1999); <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir.

18   1998); <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996); <u>Moncada</u>

19   <u>v. Chater</u>, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

20        "Substantial evidence is more than a scintilla, but less than a

21   preponderance."   <u>Reddick</u>, 157 F.3d at 720.   It is "relevant evidence

22   which a reasonable person might accept as adequate to support a

23   conclusion."   <u>Id</u>.   To determine whether substantial evidence supports

24   a finding, a court must review the administrative record as a whole,

25   "weighing both the evidence that supports and the evidence that

26   detracts from the Commissioner's conclusion."   <u>Id</u>.   "If the evidence

27   can reasonably support either affirming or reversing," the reviewing

28   court "may not substitute its judgment" for that of the Commissioner.

                                        3

1  <u>Reddick</u>, 157 F.3d at 720-721; <u>see also</u> <u>Osenbrock</u>, 240 F.3d at 1162.

2  **V.   <u>DISCUSSION</u>**

3  **A.   THE FIVE-STEP EVALUATION**

4  To be eligible for disability benefits a claimant must

5  demonstrate a medically determinable impairment which prevents the

6  claimant from engaging in substantial gainful activity and which is

7  expected to result in death or to last for a continuous period of at

8  least twelve months.  <u>Tackett</u>, 180 F.3d at 1098; <u>Reddick</u>, 157 F.3d at

9  721; 42 U.S.C. § 423(d)(1)(A).

10  Disability claims are evaluated using a five-step test:

11  Step one: Is the claimant engaging in substantial
   gainful activity?  If so, the claimant is found not
12  disabled.  If not, proceed to step two.
   Step two: Does the claimant have a "severe" impairment?
13  If so, proceed to step three.  If not, then a finding of not
   disabled is appropriate.
14  Step three: Does the claimant's impairment or
   combination of impairments meet or equal an impairment
15  listed in 20 C.F.R., Part 404, Subpart P, Appendix 1?  If
   so, the claimant is automatically determined disabled.  If
16  not, proceed to step four.
   Step four: Is the claimant capable of performing his
17  past work?  If so, the claimant is not disabled.  If not,
   proceed to step five.
18  Step five: Does the claimant have the residual
   functional capacity to perform any other work?  If so, the
19  claimant is not disabled.  If not, the claimant is disabled.

20
21  <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995, <u>as</u> <u>amended</u>

   April 9, 1996); <u>see also</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-142, 107
22
   S. Ct. 2287, 96 L. Ed. 2d 119 (1987); <u>Tackett</u>, 180 F.3d at 1098-99; 20
23
   C.F.R. § 404.1520, § 416.920.  If a claimant is found "disabled" or
24
   "not disabled" at any step, there is no need to complete further
25
   steps.  <u>Tackett</u>, 180 F.3d 1098; 20 C.F.R. § 404.1520.
26
   Claimants have the burden of proof at steps one through four,
27
28  subject to the presumption that Social Security hearings are non-

4

1  adversarial, and to the Commissioner's affirmative duty to assist

2  claimants in fully developing the record even if they are represented

3  by counsel.  Tackett, 180 F.3d at 1098 and n.3; Smolen, 80 F.3d at

4  1288.  If this burden is met, a prima facie case of disability is

5  made, and the burden shifts to the Commissioner (at step five) to

6  prove that, considering residual functional capacity ("RFC")[2], age,

7  education, and work experience, a claimant can perform other work

8  which is available in significant numbers.  Tackett, 180 F.3d at 1098,

9  1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

10      **B.  THE ALJ'S EVALUATION IN PLAINTIFF'S CASE**

11      Here, the ALJ found that Plaintiff had not engaged in substantial

12 gainful activity since her alleged disability onset date (step one);

13 that Plaintiff had "severe" impairments, namely a depressive disorder

14 not otherwise specified, mild, an anxiety disorder not otherwise

15 specified and probably situational, a personality disorder with

16 avoidant features, and plantar fasciitis (step two); and that

17 Plaintiff did not have an impairment or combination of impairments

18 that met or equaled a "listing" (step three). [AR 11-12.]  The ALJ

19 determined that Plaintiff had an RFC for light work with a restriction

20 to standing and/or walking for four hours in an eight-hour period and

21 to moderately complex tasks with four to five steps, with the

22 provision that Plaintiff cannot be in charge of the safety of others

23  _____

24      [2]  Residual functional capacity measures what a claimant can
       still do despite existing "exertional" (strength-related) and
25     "nonexertional" limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155
       n.s. 5-6 (9th Cir. 1989).  Nonexertional limitations limit ability to
26     work without directly limiting strength, and include mental, sensory,
       postural, manipulative, and environmental limitations.  Penny v.
27     Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1155
       n.7; 20 C.F.R. § 404.1569a(c).  Pain may be either an exertional or a
28     nonexertional limitation.  Penny, 2 F.3d at 959; Perminter v. Heckler,
       765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

1   or work with dangerous, moving machinery.  [AR 13.]  Plaintiff was

2   unable to perform her past relevant work (step four). [AR 16.]  The

3   vocational expert testified that a person with Plaintiff's RFC could

4   perform work existing in significant numbers, such as information

5   clerk, final inspector and cashier II (step five). [AR 17.]

6   Accordingly, Plaintiff was found not "disabled" as defined by the

7   Social Security Act. [AR 17.]

8       **C.   ISSUES IN DISPUTE**

9       The parties' Joint Stipulation identifies the following three

10  disputed issues:

11      1.    Whether the ALJ properly considered the opinion of a

12            consultative examining physician regarding Plaintiff's

13            bipolar disorder and Global Assessment of Functioning

14            ("GAF") score of 45;

15      2.    Whether the ALJ properly considered Plaintiff's medication

16            side effects; and

17      3.    Whether the ALJ properly considered the lay witness

18            statements.

19      [JS 2.]

20      As discussed below, Issue One mandates reversal of the

21  Commissioner's decision.  Issues Two and Three are without merit.

22      **D.   ISSUE ONE: DR. ZIMMERMAN**

23            **Background**

24      In the first claim, Plaintiff asserts that the ALJ did not

25  properly consider the medical evidence, particularly the opinion of

26  Dr. Emery Zimmerman, who examined Plaintiff on August 14, 2006, at the

27  CHARLEE Family Care clinic in Riverside County for an "Assessment/Care

28  Plan: INITIAL." [JS 3-4; AR 181-82.]  During the assessment, Dr.

6

1  Zimmerman gave a diagnosis of Bipolar Disorder I, Depressed, Severe;
2  and Panic Disorder without Agoraphobia; and a GAF score of 45.[3] [AR
3  181.]  In the comments section, Dr. Zimmerman wrote:

4     Client suffering from severe depression and anxiety.  She is
5     having panic attacks.  She had to quit her job of 9 years [due]
6     to symptoms.  Client crying and sleepless, constantly worrying.
7     She's also paranoid and fearful.  She [has] 3 children, is
8     separate from her husband.  She's a domestic violence and child
9     sexual abuse victim.
10    [Id.]

11    The next day, on August 15, 2006, a therapist at the CHARLEE
12 facility approved Plaintiff for monthly psychiatric evaluations with
13 medication monitoring and weekly therapy sessions for a six-month
14 period. [AR 183.]  The stated goal of the treatment was to decrease
15 Plaintiff's depressive moods and anxiety from a daily to weekly
16 occurrence within six months. [Id.]

17    On September 25, 2006, Dr. Zimmerman completed a Psychiatric
18 Assessment/Evaluation stating a diagnosis of Bipolar Disorder I,
19 depressed; and panic disorder without agoraphobia (post-traumatic
20 stress disorder ("PTSD")). [AR 184.]  In the comments section, Dr.
21 Zimmerman wrote, in part, that Plaintiff is "probably encountering
22 PTSD [due to] early abuse . . . and needs therapy desperately." [Id.]

23

24    [3]  A GAF score reflects a clinician's subjective rating, on a
scale of 0 to 100, of the more severe of two components: the severity
25 of a patient's psychological symptoms, or the psychological, social,
and occupational functioning of a patient.  A GAF score of 41 through
26 50 signifies serious symptoms, such as suicidal ideation or severe
obsessional rituals, or any serious impairment in social,
27 occupational, or school functioning, such as the absence of friends or
the inability to keep a job.  See generally Diagnostic and Statistical
28 Manual of Mental Disorders, Fourth Edition ("DSM-IV").

1    At the administrative hearing of December 12, 2008, Plaintiff
2    testified that she received counseling with a therapist through county
3    services, that the sessions were scheduled for every two weeks, that
4    she had not seen the therapist for approximately one month, and that
5    she was waiting for a referral to resume the sessions. [AR 24, 26.]
6    The current record does not contain any notes of Plaintiff's ongoing
7    treatment or therapy after September 2006, as referenced by Dr.
8    Zimmerman, the initial CHARLEE notes, and Plaintiff's testimony.

9        On May 8, 2007, Plaintiff had a Complete Psychiatric Evaluation
10   performed by Dr. Romualdo R. Rodriguez. [AR 185-91.]   There were no
11   psychiatric records for Dr. Rodriguez to review, but after reviewing
12   Plaintiff's history and conducting a mental status exam, Dr. Rodriguez
13   gave a diagnosis of PTSD, a learning disorder not otherwise specified,
14   and a GAF score of 65.[4] [AR 185-90.]   In the prognosis section of the
15   opinion, Dr. Rodriguez stated that, "From a psychiatric standpoint, as
16   long as this claimant is properly treated for her PTSD she will be
17   able to recover within the next 12 months." [AR 190.]   In the
18   functional assessment section, Dr. Rodriguez stated, among other
19   things, that Plaintiff was able to understand, remember and carry out
20   simple one or two-step job instructions, perform detailed and complex
21   instructions, and was slightly limited in all listed areas of mental
22   functioning, such as the ability to relate to supervisors, co-workers
23   and the public. [AR 191.]

24       At the administrative hearing of December 18, 2008, Dr.

25
26       [4]  A GAF score in the range of 61 through 70 denotes some mild
     symptoms, such as depressed mood or mild insomnia, or some difficulty
     in social, occupational, or school functioning, such as occasional
27   truancy or theft within the household, but indicates that the subject
     is generally functioning "pretty well" and has some meaningful
28   interpersonal relationships.

Malancharuvil, the medical expert, testified that based on his review of the available records, Plaintiff had an anxiety disorder not otherwise specified, personality difficulties with avoidance features, and mild depression. [AR 28.]  Based on the record, Plaintiff was capable of performing moderately complex tasks up to four to five-step instructions but should avoid safety operations or hazardous machinery. [AR 28.]  Dr. Malancharuvil further testified that Plaintiff was on a "maintenance course" of treatment, that "she's maintaining with the regimen," and that her anxiety appeared to be "situational." [AR 30.]  Dr. Malancharuvil also testified that based on the record, "there is no suggestion that she has not improved," that her activities were normal, and that there was no evidence of hospitalization or an increase in treatment. [AR 34.]  Dr. Malancharuvil then discussed the opinion of Dr. Rodriguez, noting that it demonstrated that Plaintiff did not meet the requirements of establishing disability at the time of the examination, and testified that the medical record did not support Dr. Zimmerman's diagnosis of bipolar disorder. [AR 34-35.]

### The Commissioner's Decision

In the administrative decision, the ALJ noted Dr. Zimmerman's initial opinion, the recommendation for individual therapy, and the treatment note of September 25, 2006. [AR 14-15.]  The ALJ stated that based on the treating records, Plaintiff "was noted to have no grave disability" and that she "received only routine outpatient treatment, and the records do not reflect any acute mental health crisis requiring inpatient hospitalization or intensive treatment." [AR 15.] The ALJ then discussed Dr. Rodriguez's opinion and conclusions in detail, as well as the testimony of Dr. Malancharuvil. [Id.]  The ALJ

1   concluded that, "I give more weight to the medical expert's testimony
2   and opinion, since the medical expert had an opportunity to review the
3   entire record as developed," and credited Dr. Malancharuvil's opinion
4   regarding Plaintiff's functional capacity. [AR 16.]

5              **Discussion**

6       The ALJ has a "special duty to fully and fairly develop the
7   record and to assure that the claimant's interests are considered
8   . . . even when the claimant is represented by counsel." Celaya v.
9   Halter, 332 F.3d 1177, 1183 (9th Cir. 2003)(ellipsis in original)
10  (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir.1983); Smolen v.
11  Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); see also Widmark v.
12  Barnhart, 454 F.3d 1063, 1069 (9th Cir. 2006)(ALJ has a duty to
13  develop the record where there is a "gap" in the medical evidence).
14  When a claimant is not represented by counsel, this responsibility is
15  heightened:  the ALJ's duty is "'to scrupulously and conscientiously
16  probe into, inquire of, and explore for all the relevant facts.  He
17  must be especially diligent in ensuring that favorable as well as
18  unfavorable facts and circumstances are elicited.'" Higbee v.
19  Sullivan, 975 F.2d 558, 561 (9th Cir. 1992)(quoting Cox v. Califano,
20  587 F.2d 988, 991 (9th Cir. 1978)).  "When 'the heavy burden imposed
21  by Cox' is not met, and the claimant may have been prejudiced, 'the
22  interests of justice demand that the case be remanded.'"  Higbee v.
23  Sullivan, 975 F.2d at 561 (citing Vidal v. Harris, 637 F.2d 710,
24  714-715 (9th Cir. 1981)); see also Widmark v. Barnhart, 4546 F.3d at
25  1069; Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003).

26      Here, the record is not adequately developed to evaluate whether
27  substantial evidence supports the Commissioner's interpretation of the
28  medical opinion evidence and the determination to adopt the medical

expert's opinion while not adopting the treating physician's opinion.
The record contains almost no treating medical evidence or therapy
notes, despite clear indications elsewhere in the record – such as Dr.
Zimmerman's initial evaluations, the CHARLEE referral, and Plaintiff's
testimony – that Plaintiff underwent therapy and treatment on at least
a semi-regular basis.  Accordingly, the court cannot properly evaluate
the opinion of the medical expert, which was adopted by the
Commissioner, that Plaintiff was on a "maintenance course" of
treatment and that "she's maintaining with the regimen."  Under these
circumstances, particularly the heightened responsibility to
scrupulously develop the record in light of the fact that Plaintiff
was unrepresented at the hearing and clear indications of a
significant gap in the record that may be prejudicial, remand for
further proceedings is appropriate.  Higbee v. Sullivan, 975 F.2d at
561.

###        E.    ISSUE TWO: MEDICATION SIDE EFFECTS

     In the second claim, Plaintiff argues that the ALJ did not make
specific findings as to her allegation of medication side effects. [JS
7-8.]  As part of her disability application, Plaintiff reported that
her medications were Celexa, Ibuprofen, Klonopin and Vicodin. [AR
155.]  Plaintiff reported that the Klonopin resulted in memory loss
and that the Vicodin resulted in nausea. [Id.]  At the hearing,
Plaintiff testified that her medications were Seroquel, Celexa and
Klonopin. [AR 24.]  Jayne Campbell, a third party witness, testified
later at the hearing that Plaintiff gets sleepy from the medication
and "can't function" and needs to nap. [AR 41.]  In the administrative
decision, the ALJ rejected the proposition that Plaintiff's medication
side effects presented significant functional limitations, stating

1  that, "Although the claimant alleged that her medications make her

2  sleepy, no side effects are objectively documented or corroborated.

3  There is no evidence that the doctor substituted medications in an

4  attempt to produce less symptomatology or relieve side effects." [AR

5  14.]

6      Contrary to Plaintiff's assertion, the ALJ did make specific

7  findings as to the claim of medication side effects, and they were

8  supported by the record.  There was no documentation of the side

9  effects alleged by Plaintiff; moreover, a treatment note by Dr.

10  Zimmerman indicated that there were no reported side effects. [AR

11  184.]  Neither was there evidence that Plaintiff's medications were

12  adjusted in response to side effects; for example, the record

13  indicates that Plaintiff was still taking Klonopin from the time of

14  her application filing to the date of the hearing.  Moreover, the ALJ

15  found that Plaintiff's subjective symptom statements and other

16  testimony were not entirely credible, which Plaintiff does not contest

17  as an issue in the present action, and Plaintiff's challenge to the

18  ALJ's finding that Ms. Campbell's testimony was not entirely credible

19  is without merit, as discussed below.  Accordingly, this issue does

20  not warrant reversal of the ALJ's decision.

21      **F.   ISSUE THREE: LAY TESTIMONY AND STATEMENTS**

22      In the final claim, Plaintiff asserts that the ALJ did not

23  properly consider the written statements and hearing testimony of

24  Jayne Campbell, Plaintiff's friend. [JS 9-11.]  On February 2, 2007,

25  Ms. Campbell completed a "Function Report - Adult - Third Party"

26  describing Plaintiff's daily activities and other functions. [AR 133-

27  40.]  Ms. Campbell wrote that she has known Plaintiff for nine years

28  and that she sees Plaintiff fifteen hours per week for bible study.

12

[AR 133.]  Ms. Campbell also wrote, among other things, that Plaintiff's anxiety makes it difficult to sleep, that driving is too stressful for Plaintiff, that Plaintiff has problems with memory, concentration, and focusing on instructions, and that Plaintiff does not handle stress or changes in routine well. [AR 134, 136, 138, 139.] At the hearing on December 18, 2008, Ms. Campbell testified that she sees Plaintiff three times a week for bible meetings and gives Plaintiff rides to the grocery store and doctor's appointments. [AR 40.]  Ms. Campbell also testified that Plaintiff has anxiety and depression, that Plaintiff's medications cause sleepiness so that Plaintiff "can't function" and needs to nap, that Plaintiff withdraws and "can't deal with people," and that Plaintiff had physical problems such as plantar fasciitis. [AR 41-42.]

     In the administrative decision, the ALJ stated that, after reading and considering Ms. Campbell's statements, he found that "these statements are only credible to the extent that the claimant can do the work described by the vocational expert." [AR 14.]  The ALJ noted that Plaintiff's daily activities included cleaning, cooking, laundry, shopping, and taking care of her children. [Id.]  The ALJ stated that Ms. Campbell's statements regarding Plaintiff's impaired memory and other limitations "may be true," but that the medical opinions in the record did not support a disabling level of impaired functioning. [Id.]  The ALJ noted that Ms. Campbell "is not a medical professional" and was "not competent to make a diagnosis or argue the severity of the claimant's symptoms in relationship to her ability to work." [Id.]  Finally, the ALJ noted that third party evidence "do not overcome the medical evidence" and that "it has not yet come to a point at which untrained, medically unqualified relatives can have

13

their kindly attempts to help the claimant overcome the opinions of medically trained personnel." [AR 14.]  Plaintiff contends that the ALJ's evaluation "failed to properly consider" Ms. Campbell's statements and revealed "a highly troubling and fundamentally unfair judicial bias toward lay witness statements." [JS 10.]

        The testimony of lay witnesses about their own observations regarding the claimant's impairments constitutes competent evidence that must be taken into account and evaluated by the Commissioner in the disability evaluation.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006); Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006).  Such testimony cannot be discounted unless the ALJ gives reasons that are germane to that witness. Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008); Stout v. Commissioner, 454 F.3d at 1053 (citing Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)); Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).  "Inconsistency with medical evidence is one such reason." Bayliss v. Barnhart, 427 F.3d at 1218 (citing Lewis v. Apfel, 236 F.3d at 511).  In this case, the ALJ's detailed evaluation of Ms. Campbell's statements satisfied this standard.  The ALJ accepted statements by Ms. Campbell that were consistent with evidence of Plaintiff's activities and objective medical evidence, but rejected the portions of her statements that did not meet this standard.  The ALJ's rejection of those statements was supported by substantial evidence and was not erroneous.  See Bayliss v. Barnhart, 427 F.3d at 1218 (upholding rejection of lay witness testimony that was inconsistent with Plaintiff's activities and objective evidence in the record).  Accordingly, this claim is without merit.

14

### G. REMAND FOR FURTHER PROCEEDINGS

The decision whether to remand for further proceedings is within the discretion of the district court. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-1178 (9th Cir. 2000). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. <u>Harman</u>, 211 F.3d at 1179 (decision whether to remand for further proceedings turns upon their likely utility). However, where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. <u>Id</u>. Here, as set out above in the discussion of Issue One, outstanding issues remain before a finding of disability can be made. Accordingly, remand is appropriate.

### VI. <u>ORDERS</u>

Accordingly, **IT IS ORDERED** that:

1. The decision of the Commissioner is **REVERSED**.

2. This action is **REMANDED** to defendant, pursuant to Sentence Four of 42 U.S.C. § 405(g), for further proceedings as discussed above.

3. The Clerk of the Court shall serve this Decision and Order and the Judgment herein on all parties or counsel.

DATED: November 30, 2009

                                   _____/S/_____
                                        CARLA M. WOEHRLE
                                   United States Magistrate Judge

15